AO 106 (Rev. 04/10) Application for a Search Warrant (Modified: WAWD 10-26-18)

# UNITED STATES DISTRICT COURT
### for the
### Western District of Washington

| | |
|---|---|
| FILED _____ LODGED _____ RECEIVED | |
| **06/29/2021** | |
| CLERK U.S. DISTRICT COURT | |
| WESTERN DISTRICT OF WASHINGTON AT TACOMA | |
| BY _____ DEPUTY | |

In the Matter of the Search of

*(Briefly describe the property to be searched
or identify the person by name and address)*

Subject Google Accounts, as more fully described in
Attachment A

)
)
)
)
)
)

Case No.   3:21-mj-05141

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Subject Google Accounts, as more fully described in Attachment A

located in the _____Northern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), 843, and 846; 18 U.S.C. 1956 | Distribution and manufacturing of controlled substances; unlawful use of a communication facility; Conspiracy; and, Money laundering |

The application is based on these facts:

✓ See Affidavit of Terrance G. Postma, continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or: ☐ telephonically recorded.

*Terrance G. Postma*
*Applicant's signature*

SA Terrance G. Postma, FBI
*Printed name and title*

○ The foregoing affidavit was sworn to before me and signed in my presence, or
◉ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date:   06/29/2021

*Theresa L. Fricke*
*Judge's signature*

City and state:  Tacoma, Washington

Theresa L. Fricke, United States Magistrate Judge
*Printed name and title*

USAO: 2021R00471

## **ATTACHMENT A**

### **Property to Be Searched**

This warrant applies to all such records and information related to any Google, Inc. accounts associated with the following ("Subject Accounts"):

- **Subject Account 1**: The account or accounts that are used on or registered for the cellular telephone or telephones that use the phone number (219) 802-3769 and having used the following IMSI and IMEI numbers:
  - o IMSI: 310240139266141
  - o IMEI: 35459011790834
  - o IMSI: 310240130938201
  - o IMEI: 35452711281286

- **Subject Account 2**: The account or accounts that are used on or registered for the cellular telephone or telephones that use the phone number (401) 470-9187 and having used the following IMSI and IMEI numbers:
  - o IMSI: 310260044600099
  - o IMEI: 99001711217855

- **Subject Account 3**: The account corresponding to the email address sherwood.lie@gmail.com.

- **Subject Account 4**: The account or accounts that are used on or registered for the cellular telephone or telephones that use the phone number (401) 410-4880.

- **Subject Account 5**: The account or accounts that are used on or registered for the cellular telephone or telephones that use the phone number (210) 984-2543.

- **Subject Account 6**: The account or accounts that are used on or registered for the cellular telephone or telephones that use the phone number (360) 728-0555.

- **Subject Account 7**: The account corresponding to the email address jsherwood.lie@gmail.com.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- **Subject Account 8**: The account or accounts that are used on or registered for the cellular telephone or telephones that use the phone number (639) 997-5755 and having used the following IMSI and IMEI numbers:
  - IMSI: 302220546520440
  - IMEI: 35273411178113

- **Subject Account 9**:  The account or accounts that are used on or registered for the cellular telephone or telephones that use the phone number (672) 999-8910 and having used the following IMSI and IMEI numbers:
  - IMSI: 302220546509666
  - IMEI: 35273411178113

- **Subject Account 10**: The account or accounts that are used on or registered for the cellular telephone or telephones that use the phone number (825) 994-9756 and having used the following IMSI and IMEI numbers:
  - IMSI: 302220546521635
  - IMEI: 35273411178113
  - IMEI: 35155907718095

- **Subject Account 11**:  The account or accounts that are used on or registered for the cellular telephone or telephones that use the phone number (587) 581-7464 and having used the following IMSI and IMEI numbers:
  - IMSI: 302220546521636
  - IMEI: 35273411178113
  - IMEI: 35155907718095
  - IMEI: 35318111015139

- **Subject Account 12**: The account or accounts that are used on or registered for the cellular telephone or telephones that use the phone number (825) 994-8556 and having used the following IMSI and IMEI numbers:
  - IMSI: 302220546431992
  - IMEI: 35273411178113

Attachment A – 2
USAO #2021R00471

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

- **Subject Account 13**: The account or accounts that are used on or registered for the cellular telephone or telephones that use the phone number (672) 999-7112 and having used the following IMSI and IMEI numbers:
  - IMSI: 302220546517875
  - IMEI: 35155907718095
  - IMEI: 35318111015139

- **Subject Account 14**: The account or accounts that are used on or registered for the cellular telephone or telephones that use the phone number (360) 808-2159.

- **Subject Account 15:** The email account kevingartry@gmail.com

that is stored at premises owned, maintained, controlled, or operated by Google, Inc., a company headquartered at 1600 Amphitheatre Parkway, Mountain View, California 94043.

Attachment A – 3
USAO #2021R00471

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**ATTACHMENT B**

**LIST OF ITEMS TO BE SEIZED AND SEARCHED**

**1. Information to be disclosed by Google, Inc.**

To the extent that the information described in Attachment A is within the possession, custody, or control of Google, Inc. ("Google" or "Provider"), regardless of whether such information is stored, held or maintained inside or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Provider, Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A (the "Account(s)") from the date of December 1, 2019 to the present:

a. The contents of all emails associated with the account, including stored or preserved copies of emails sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email;

b. The contents of all instant messages stored in the account, including copies of messages sent to and from the account, draft messages, the source and destination addresses associated with each message, the date and time at which a message was sent/received, and the size and length of each message;

c. All records or other information regarding the subscriber and the identification of the account, to include full name, physical address, telephone numbers, IMEI/MEID, serial number, SIM operator, cell operator, model number, and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

d. The types of services utilized;

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1    e.    All records or other information stored at any time by an individual using

2  the account, including address books, contact and buddy lists, calendar data, pictures, and

3  files;

4    f.    All records pertaining to communications between Provider and any person

5  regarding the account, including contacts with support services and records of actions

6  taken;

7    g.    Passwords or other protective devices in place and associated with the

8  Account(s), which would permit access to the content stored therein;

9    h.    Web search history, including, but not limited to, mobile and desktop

10  browser searches;

11    i.    All activity relating to any Google mobile application (app), and all data

12  associated therewith;

13    j.    All activity relating to Google Voice, including all audio activity captured,

14  and all data associated therewith;

15    k.    All activity relating to Google Maps, and all data associated therewith,

16  including, but not limited to:  locations saved, frequent locations, favorite and/or starred

17  locations, location and route searches;

18    l.    Incoming and outgoing phone calls, voicemails, including voicemail

19  content and any and all incoming or outgoing text message history, together with the

20  content thereof to include SMS, MMS, or any other form of text message

21  communication, and all data associated therewith;

22    m.    All activity relating to Google Hangouts, including, but not limited to:  all

23  communications, including, audio, video, text message and/or chat communications,

24  and all data associated therewith;

25    n.    All activity relating to Google Play, including, but not limited to:

26  downloaded, installed, and/or purchased apps, payment transactions, and all data

27  associated therewith;

28

Attachment B – 2
USAO #2021R00471

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1        o.    All activity relating to Google Plus, including, but not limited to:  posts,
2   status updates, photographs, and videos, and all data associated therewith;

3        p.    All activity relating to Google Photos, including, but not limited to:  all
4   photographs and videos that are stored the account, and/or were uploaded to or
5   downloaded from, any other Google service, and all data associated therewith;

6        q.    All activity relating to Google Drive, including, but not limited to:  all files,
7   folders, media, and/or data uploaded and/or stored within the account, an all data
8   associated therewith;

9        r.    All activity relating to Google Keep, including, but not limited to:  entries
10  created, deleted, or modified, and all data associated therewith;

11       s.    All activity relating to Google Contacts and other Google services relating
12  to contacts, including, but not limited to:  contacts stored, created, and deleted, and all
13  data associated therewith;

14       t.    All historical account information, including call forwarding number, and
15  account backup telephone number; subscriber registration information, sign-up IP address
16  and associated time stamp, telephone connection records, billing information, stored text
17  message content, stored voicemail content, call records, and IP log information;

18       u.    **Location Information**:  All location data collected by Google pertaining
19  to the Account(s), whether derived from Global Positioning System (GPS) data, cell
20  site/cell tower triangulation precision measurement information such as timing advance
21  or per call measurement data, and Wi-Fi location.  Such data shall include GPS
22  coordinates and the dates and times of all location data recordings during the following
23  time periods:

24       (1)    Historical location information from December 1, 2019 to current.

25  **2.    Linked Subject Accounts**
26  This Search Warrant also requires Google to produce the following information for the
27  Subject Accounts (collectively the "Linked Subject Accounts"):

28

Attachment B – 3
USAO #2021R00471

a. A list of all other accounts linked to the Subject Accounts because of machine cookie overlap with any Subject Account;

b. A list of all other accounts that list the same SMS phone number as any Subject Account;

c. A list of all other accounts that list the same recovery email address as any Subject Account;

d. A list of all other accounts that shared the same creation IP address as any Subject Account within 30 days of creation;

e. Subscriber records for each of the Linked Subject Accounts including 1) names, email addresses, and screen names; 2) physical addresses; 3) records of session times and durations; 4) length of service (including start date) and types of services utilized; 5) telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address such as internet protocol address, media access card addresses, or any other unique device identifiers recorded by Google in relation to the account; 6) account log files (login IP address, account activation IP address, and IP address history; 7) detailed billing records/logs; 8) means and source of payment; and 9) lists of all related accounts;

f. All records and other information (not including the contents of communications) relating to the Linked Subject Accounts, including:

    a. Records of user activity for each connection made to or from the Account(s), including log files; messaging logs; the date, time, length, and method of connections, data transfer volume; user names; and source and destination Internet Protocol Addresses; cookie IDs; browser type;

    b. Information about each communication sent or received by the Account(s), including the date and time of the communication, the

method of communication, and the source and destination of the communication (such as source and destination email addresses, IP addresses, and telephone numbers);

c.   All records pertaining to devices associated with the accounts to include serial numbers, model type/number, IMEI, phone numbers, MAC Addresses.

**3.   Information to be seized by the government**

All information described above in Section I that relates to the following crimes: distribution and manufacturing of controlled substances, in violation of 21 U.S.C. § 841(a)(1); unlawful use of a communication facility to facilitate the distribution of controlled substances, in violation of 21 U.S.C. § 843(b); conspiracy to commit these offenses, in violation of 21 U.S.C. § 846; and money laundering, in violation of 18 U.S.C. § 1956, including the following matters:

a.   All content, including, but not limited to, email, instant messages and text messages, web searches and search terms, images, videos, written posts, replies, comments, and files.

b.   All financial and business records, including, but not limited to, income tax returns, financial statements, disbursement records, real estate transaction and financing records, receipt records, funding agreements, weekly, monthly and yearly records or summaries of receipts, purchase invoices, books, records, purchase orders, invoices, money orders, cashier checks, utility bills, records of repairs, correspondence, passbooks, bank account statements, check register, deposit and withdrawal records, canceled checks, loan documents, journals, ledgers, notes, diaries, receipts and invoices reflecting the receipt, transfer or expenditure of funds, brokerage account statements, credit and debit card statements, payment records, notebooks, papers, money orders, and cash, and any passwords and personal identification numbers (PINS) relating thereto.

Attachment B – 5
USAO #2021R00471

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

c.      Contact data and information, including names, telephone numbers, physical addresses, email addresses, and/or other online contact information (e.g., social media usernames), and any other data and record which contain contact information for any individuals.

d.      All data and information pertaining to any email, social media, financial, or other online account of any kind.

e.      All data and information pertaining to any Internet activity and any and all activity relating to any Google services.

f.      Any and all data, documents, records, and correspondence, in any format and medium (including, but not limited to e-mail messages, chat logs and electronic messages) pertaining to any weapon, vehicle, and any other fruits, evidence, and instrumentalities of any of the listed offenses, and to the identification of individuals involved in, or having knowledge of, such activities.

g.      All communications logs and records of user activity, including, but not limited to:

(1)      Telephone call logs, which may include telephone numbers or other caller identification information for calls connected, attempted, received, and failing to connect, as well as dates and times of connection, disconnection, duration of calls, and other such information.

(2)      Data logs, which may include connection dates and times, disconnect date and times, method of connection (e.g., telnet, ftp, http, etc.), data transfer volume, user name(s) associated with said connections, Internet Protocol address of the source and/or destination of the connection, and information related to the location of the cellular telephones and digital storage devices.

**Location Information**:  All historical location data associated with the Subject Google Accounts for the time period July 1, 2020 to current.

Attachment B – 6
USAO #2021R00471

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

### AFFIDAVIT OF TERRANCE G. POSTMA

STATE OF WASHINGTON       )
                          )
COUNTY OF PIERCE          )

I, Terrance G. Postma, being first duly sworn on oath, depose and say:

### INTRODUCTION AND AGENT BACKGROUND

1.      I have been employed as a Special Agent of the FBI since June 2002 and am currently assigned to the Seattle Division's Poulsbo Resident Agency.  My duties include the investigation and apprehension of individuals engaging in narcotics trafficking and money laundering.  I am a "federal law enforcement officer" as defined in Rule 41(a)(2)(C) of the Federal Rules of Criminal Procedure, that is, a government agent who is engaged in enforcing the criminal laws of the United States and within a category of officers authorized by the Attorney General to request a search warrant.

2.      I have participated in this investigation and I have received information about matters relevant to this investigation from other sources, including Special Agents of the FBI, Department of Homeland Security Investigations (HSI), and numerous other state and local investigators familiar with narcotics trafficking and money laundering. The statements contained in this affidavit are based on my experience and background as a law enforcement officer and, in part, on information provided by other investigators assigned to this case, on information provided by confidential sources, records obtained by the investigators and summaries of records prepared by them.  I am familiar with the information submitted in this affidavit.  This affidavit is intended to show merely that there is sufficient probable cause for the warrant requested herein and does not set forth all of my knowledge about this matter.

3.      Based on my training and experience, I am familiar with the methods of operation employed by drug traffickers operating at the local, state, national, and international levels, including those involving the distribution, storage, and transportation of controlled substances and collection of money that constitutes the proceeds of drug-

AFFIDAVIT OF SA POSTMA – 1
USAO #2021R00471

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   trafficking activities.  Specifically, I am familiar with the manner in which drug

2   traffickers use vehicles, common carriers, mail and private delivery services, and a

3   variety of other means to transport and distribute drugs and the proceeds of drug

4   trafficking.  I am familiar with the manner in which drug traffickers often store drugs and

5   drug proceeds in storage sites commonly referred to as "stash houses."

6       4.      Based on my training and experience, I understand that illegal drug

7   trafficking often involves the local, interstate, and international movement of drugs to

8   distributors and co-conspirators at multiple levels, and the movement of the proceeds of

9   drug trafficking among multiple participants including suppliers, customers, distributors

10   and money launderers.  Consequently, the location of drug traffickers and those working

11   with them can be instrumental in identifying and intercepting shipments of illegal drugs

12   and drug proceeds.  Based on my training and experience, I believe that illegal drugs and

13   drug proceeds are often transported in motor vehicles and that drug traffickers often

14   coordinate such transportation through the use of cellular telephones, including the use of

15   various communication and navigation applications and services accessible through

16   cellular telephones, including applications and services provided by Google.

17       5.      I, together with agents with Homeland Security Investigations, am involved

18   in an investigation into a suspected cross-border drug smuggling ring that is believed to

19   have moved and/or attempted to move large amounts of methamphetamine, cocaine,

20   heroin and marijuana to and from Canada.  Participants in this ring include John

21   SHERWOOD and Canadian national Kevin GARTRY, both of whom have prior federal

22   convictions for similar behavior.  As set forth below, there is probable cause to believe

23   that both men, together with others known and unknown, including Erica BOCELLE and

24   Jean STUART have conspired to move these controlled substances across the

25   U.S./Canadian border.  There is also probable cause to believe that they have used

26   cellular telephones with services provided by Google and other Google services to

27   facilitate their criminal activities, and that evidence of their criminal activities will be

28   found in information stored by Google.

AFFIDAVIT OF SA POSTMA – 2
USAO #2021R00471

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**PURPOSE OF AFFIDAVIT**

6.    I make this affidavit in support of an application for a search warrant for information with the following ("the Subject Accounts"):

- **Subject Account 1**: This is a cellular telephone account used by SHERWOOD.  Subject Account 1 is the account or accounts that are used on or registered for the cellular telephone or telephones that use the phone number (219) 802-3769 and having used the following IMSI and IMEI numbers:
  - IMSI: 310240139266141[1]
  - IMEI: 35459011790834[2]
  - IMSI: 310240130938201
  - IMEI: 35452711281286

- **Subject Account 2**: This is a cellular telephone account used by Erica BOCELLE, an associate of SHERWOOD's who (by her own admission) assisted SHERWOOD with some of the criminal activity alleged herein.  Subject Account 2 is the account or accounts that are used on or registered for the cellular telephone or telephones that use the phone number (401) 470-9187 and having used the following IMSI and IMEI numbers:
  - IMSI: 310260044600099
  - IMEI: 99001711217855

- **Subject Account 3**: The account corresponding to the email address sherwood.lie@gmail.com, use by SHERWOOD.

- **Subject Account 4**: The account or accounts that are used on or registered for the cellular telephone or telephones that use the phone number (401) 410-4880.  This is another cellular telephone number used by SHERWOOD.

---

[1] An IMSI (International Mobile Subscriber Identity) is a unique identifier that defines a subscriber in the wireless world.  The IMSI is usually associated with a SIM card, and can be ported to different cellular devices.  So, someone who buys a smartphone will have an IMSI for their cellular service with a particular wireless service provider that can change if they switch providers.

[2] An IMEI ("international mobile equipment identifier number") is unique to a particular cellular devices, i.e. each cellular device has its own unique IMEI number (similar to a serial number) that does not change.  Multiple telephone numbers can be associated with one IMEI, as different phone numbers are assigned or "ported" to a particular cellular device.  So, a particular cell phone can have both an IMSI (associated with the subscription to the cellular service) and an IMEI (a fixed serial number for the device itself).  The IMSI could change, but the IMEI would not as to that particular device.

AFFIDAVIT OF SA POSTMA – 3
USAO #2021R00471

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

- **Subject Account 5**: The account or accounts that are used on or registered for the cellular telephone or telephones that use the phone number (210) 984-2543.  This is another cellular telephone number used by SHERWOOD.

- **Subject Account 6**: The account or accounts that are used on or registered for the cellular telephone or telephones that use the phone number (360) 728-0555.  This is a cellular telephone account used by Jean STUART, another associate of SHERWOOD's who has assisted SHERWOOD with his criminal activity.

- **Subject Account 7**: The account corresponding to the email address jsherwood.lie@gmail.com.  This is another email account used by SHERWOOD.

- **Subject Account 8**: This is a cellular telephone number and device associated with Kevin GARTRY, who is SHERWOOD's counterpart in Canada.  Subject Account 8 is the account or accounts that are used on or registered for the cellular telephone or telephones that use the phone number (639) 997-5755 and having used the following IMSI and IMEI numbers:
  - IMSI: 302220546520440
  - IMEI: 35273411178113

- **Subject Account 9**:  This is another cellular telephone number and device[s] associated with Kevin GARTRY.  This is the account or accounts that are used on or registered for the cellular telephone or telephones that use the phone number (672) 999-8910 and having used the following IMSI and IMEI numbers:
  - IMSI: 302220546509666
  - IMEI: 35273411178113

- **Subject Account 10**: This is another cellular telephone number and device[s] associated with Kevin GARTRY.  This is the account or accounts that are used on or registered for the cellular telephone or telephones that use the phone number (825) 994-9756 and having used the following IMSI and IMEI numbers:
  - IMSI: 302220546521635

AFFIDAVIT OF SA POSTMA – 4
USAO #2021R00471

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

- o  IMEI: 35273411178113
- o  IMEI: 35155907718095

- **Subject Account 11**:  This is another cellular telephone number and device[s] associated with Kevin GARTRY.  This is the account or accounts that are used on or registered for the cellular telephone or telephones that use the phone number (587) 581-7464 and having used the following IMSI and IMEI numbers:
  - o  IMSI: 302220546521636
  - o  IMEI: 35273411178113
  - o  IMEI: 35155907718095
  - o  IMEI: 35318111015139

- **Subject Account 12**: This is another cellular telephone number and device[s] associated with Kevin GARTRY.  This is the account or accounts that are used on or registered for the cellular telephone or telephones that use the phone number (825) 994-8556 and having used the following IMSI and IMEI numbers:
  - o  IMSI: 302220546431992
  - o  IMEI: 35273411178113

- **Subject Account 13**: This is another cellular telephone number and device[s] associated with Kevin GARTRY.  This is the account or accounts that arc used on or registered for the cellular telephone or telephones that use the phone number (672) 999-7112 and having used the following IMSI and IMEI numbers:
  - o  IMSI: 302220546517875
  - o  IMEI: 35155907718095
  - o  IMEI: 35318111015139

- **Subject Account 14**:  This is another cellular telephone used by SHERWOOD.  Subject Account 14 is the account or accounts that are used on or registered for the cellular telephone or telephones that use the phone number (360) 808-2159.

- **Subject Account 15:**  The email account kevingartry@gmail.com.  As The address suggests, this is another email account used by GARTRY.

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

7.     All of the requested information is stored at premises owned, maintained, controlled, or operated by Google, Inc. ("Google"), an online account provider headquartered at 1600 Amphitheatre Parkway, Mountain View, California.  The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google to disclose to the government copies of the information, including historical location data and the content of historical communications, pertaining to the subscriber or customer associated with the Subject Accounts, as  further described in Attachment A.  Upon receipt of the information described in Attachment A, government-authorized persons will review that information to locate the items described in Attachment B.

8.     As set forth below, there is probable cause to believe that the SUBJECT ACCOUNTS are used by the members of the cross-border drug smuggling ring, including SHERWOOD, GARTRY, BOCELLE, STUART and/or others unknown, to commit one or more of the following violations of federal law:  distribution and manufacturing of controlled substances, in violation of 21 U.S.C. § 841(a)(1); unlawful use of a communication facility to facilitate the distribution of controlled substances, in violation of 21 U.S.C. § 843(b); conspiracy to commit these offenses, in violation of 21 U.S.C. § 846; and money laundering, in violation of 18 U.S.C. § 1956. I believe that fruits, instrumentalities, and evidence of the crimes may be contained within the SUBJECT ACCOUNTS.  Further, investigators believe that the search of the SUBJECT ACCOUNTS will lead to the identification of additional individuals and co-conspirators who were and may be still engaged in the commission of those and related crimes.

9.     Since this affidavit is being submitted for the limited purpose of obtaining authority to search the SUBJECT ACCOUNTS, I have not included every fact known concerning this investigation.  I have set forth only the facts that I believe are essential for a fair determination of probable cause for the requested search warrants.

AFFIDAVIT OF SA POSTMA – 6
USAO #2021R00471

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1

**SOURCES OF INFORMATION**

2    10.    I have obtained the facts set forth in this affidavit through my personal

3  participation in the investigation described below; from oral and written reports of other

4  law enforcement officers; and from records, documents, and other evidence obtained

5  during this investigation.  Insofar as I have included event times in this affidavit, those

6  event times are approximate.

7

**SUMMARY OF PROBABLE CAUSE**

8  **A.    Discovery of Methamphetamine on Northwest Washington Coastline**

9    11.    On April 7, 2021, the Clallam County Sheriff's Office (CCSO) received

10  information from a concerned citizen. The citizen reported that a duffel bag, containing

11  plastic bags filled with a white crystal substance, was located on the beach off of Seal

12  Rock Road, Port Angeles, WA. Later that same day, detectives with the Olympic

13  Peninsula Narcotics Enforcement Team (OPNET) met with the concerned citizen, who in

14  turn lead them to the beach where the subject bag was located.

15    12.    OPNET detectives described the bag as a large "Mainstays" branded, gray

16  in color, duffel bag with wheels. When opened, detectives noted the duffel bag contained

17  two large plastic trash bags, each of which was tied in a knot. Inside the trash bags were

18  several large vacuum sealed bags. Upon opening one of the vacuum sealed bags,

19  detectives noted a faint fabric softener/laundry detergent type odor. I know, based on my

20  training and experience, that drug traffickers will often try and conceal the odor of

21  controlled substances using fabric softeners and similar substances in an attempt to defeat

22  detection. The vacuum sealed bag contained large white crystal substance, which field

23  tested positive for the presence of methamphetamine. Detectives transported the duffel

24  bag and contents to CCSO for evidence processing.

25    13.    Detectives recovered sixteen vacuum sealed bags from inside the duffel

26  bag. Fourteen of the vacuum sealed bags contained suspected methamphetamine, each

27  weighing 4 pounds. An additional vacuum sealed bag also contained suspected

28

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

methamphetamine and weighed 3.8 pounds. The final vacuum sealed bag contained a white powdery substance that field tested positive for cocaine and weighed 2.6 pounds.

14.     On April 11, 2021, OPNET detectives recovered seven additional large duffel bags, weighing a total of approximately 340 pounds. Inside the duffel bags were additional packages/containers that contained white crystal shards that field tested positive for the presence of methamphetamine. The subject bags were located under a bridge near 38800 Highway 112, west of Port Angeles, WA. The bags were taken into evidence by CCSO.

15.     On April 12, 2021, the seized items were transferred to the Federal Bureau of Investigation (FBI) and were transported from the CCSO in Port Angeles, Washington to the FBI's Seattle Field Office in Seattle, Washington. There the bags were processed by members of the Seattle Field Office Evidence Response Team (ERT). The ERT determined that inside the bags were black garbage bags containing additional packages/containers filled with a white crystal substance. The ERT was aware that law enforcement had previously field tested the white crystal substance, which tested positive for the presence of methamphetamine.

**B.     Identification of SHERWOOD and BOCELLE as being Associated with the Bags – Evidence of Use of Subject Accounts 1 - 3**

16.     The ERT noted that most of the duffel bags included tags with potentially identifying information such as style numbers, UPC numbers, and RN numbers inside of the duffel bags.  Investigators later determined that some of the bags appeared to be Walmart brand bags. Investigators then provided Walmart with style numbers, UPC numbers, and RN numbers and requested Walmart determine if anyone had recently purchased items with the same identifiers.

17.     On April 14, 2021, investigators were notified that Walmart had identified several transactions related to the identifiers found in the bags.  In one of the transactions, a gentleman purchased four of the items in one transaction on April 3, 2021.

AFFIDAVIT OF SA POSTMA – 8
USAO #2021R00471

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   Additionally, Walmart notified investigators that the unknown individual left Walmart in
2   a U-Haul vehicle.

3       18.    Walmart provided investigators with security video footage related to the
4   transaction.  Review of the security video footage reveals a then unknown male (later
5   identified as John SHERWOOD, as set forth below) purchasing several items including
6   four duffel bags in one transaction on April 3, 2021.  The unknown individual loaded the
7   contents of the purchase into a U-Haul vehicle.  The U-Haul then departed the area.

8       19.    On April 15, 2021, investigators spoke with a manager at the Riviera Inn
9   Motel, Port Angeles, WA. Investigators provided the manager with an image, taken from
10  the Walmart security video depicting the unknown male subject provided by Walmart.
11  The manager identified the unknown male subject as John SHERWOOD, a recent tenant
12  of the Riviera Inn Motel.

13      20.    Riviera Inn Motel receipts indicated SHERWOOD recently rented a room
14  from April 2, 2021 to April 12, 2021. Of note, these dates bookend the dates where the
15  large amounts of methamphetamine were recovered in the same area.  The hotel receipts
16  additionally identified SHERWOOD's address as Schertz, Texas 78154.  Riviera Inn
17  Motel security video footage additionally showed SHERWOOD arrived in a U-Haul
18  rental vehicle that matched the description of the U-Haul rental vehicle contained in the
19  previously mentioned Walmart security footage.

20      21.    As part of the room rental, SHERWOOD provided a cellular telephone,
21  telephone number 219-802-3769 (hereinafter, "**Subject Account 1"**). Motel management
22  also noted that SHERWOOD was accompanied by a woman named ERIKA BOCELLE,
23  who also rented a room at the motel.

24      22.    Additional information received from the Riviera Inn Motel indicated
25  SHERWOOD rented and paid for an additional room between the dates of April 7, 2021,
26  and April 10, 2021.  This additional room was for a woman named Erica BOCELLE.
27  The motel receipts additionally identified BOCELLE'S address as Woonsocket, Rhode
28  Island 02895, and her telephone number as (401) 470-9187 (hereinafter, "**Subject**

AFFIDAVIT OF SA POSTMA – 9
USAO #2021R00471

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  **Account 2**").  The Riviera Inn Motel manager also stated that when BOCELLE departed

2  from the motel on April 10, 2021, she left alone in the aforementioned U-Haul rental

3  vehicle.

4      23.     On April 16, 2021, investigators spoke with the manager at Angeles and

5  Bayview Storage, Port Angeles, WA. The manager told investigators that SHERWOOD

6  had rented storage unit A85 on April 3, 2021. The manager provided investigators with a

7  photocopy of SHERWOOD's Texas issued driver's license, which identified

8  SHERWOOD as residing at 14384 Schmidt Craft Lane, Schertz, Texas 78154. As part of

9  the rental, SHERWOOD provided **Subject Account 1** as his telephone number**,**

10  sherwood.lie@gmail.com (hereinafter, "**Subject Account 3**") as his email address, and 1

11  Tupperware Dr, Building #9, North Smithfield, Rhode Island 02896 as his address**.**

12  Angeles and Bayview Storage stated between the dates April 3, 2021, and April 12, 2021,

13  SHERWOOD arrived and departed numerous times in a U-Haul rental vehicle that

14  matched the description of the U-Haul rental vehicle observed in the previously

15  mentioned Walmart security footage.

16      24.     Angeles and Bayview Storage management provided investigators with

17  security video footage of the U-Haul rental vehicle arriving at their business in the

18  afternoon of April 8, 2021. The video footage showed the subject U-Haul parked

19  immediately next to the breezeway that contained unit A85.[3]  An adult male, believed to

20  be SHERWOOD, exited the U-Haul and proceeded to spend the next several minutes

21  walking into the breezeway area, where A85 is located, and temporarily away from

22  camera view. Moments later, the male reappeared from the breezeway to load items into

23  the side door of the U-Haul. Several of the items the male loaded appeared to be large

24  bags that were dark in color.

25      25.     On April 16, 2021, U-Haul provided investigators with records related to a

26  U-Haul vehicle that was rented to JOHN SHERWOOD. Those records include a

27  _____

28  [3] The breezeway appears to be a covered hallway/walkway that leads to individual storage units.

photograph of a Texas driver's license number 43704436 for JOHN MICHAEL
SHERWOOD, date of birth in 1957, address 14384 Schmidt Craft Lane, Schertz, Texas.
The records reveal that the vehicle was rented in Sacramento, California on March 30,
2021, and returned to U-Haul in Missoula, Montana on April 12, 2021. The U-Haul
records also listed **Subject Account 1** as the primary phone for SHERWOOD.   A note
included in the records showed that JOHN SHERWOOD had been expected to return the
rented vehicle at the Sacramento location at an earlier time.  A note in the U-Haul records
created by U-Haul personnel on April 9, 2021 at 11:53 AM states "Customer is
apparently in the hospital with a broken knee and covid, truck will be returned in port
angeles WA."

26.     Also, on April 16, 2021, the United States Border Patrol (USBP) Agent
Brian E. Benzler and his USBP Canine Kevin, conducted a sniff of the area in and around
Angeles and Bayview Storage, storage unit A85.  The manager of Angeles and Bayview
Storage provided consent, allowing the USBP access to the storage unit business and
exterior area near A85. Canine Kevin conducted an open-air sniff of the breezeway area
which leads to unit A85. Canine Kevin alerted near the area of the lock and chain for the
pass-through gate, which was approximately one (1) foot away from the exterior door of
unit A85.

27.     Investigators requested and were granted a search warrant for Unit A85.
Inside, investigators located a pair of oars, a small air pump, a 60 liter wet/dry bag, and
two cushions believed to be raft cushions.  I know, based on my training and experience
(and the simple exercise of common sense) that these items can be used to smuggle
contraband across the waterway between the United States and Canada.

**C.     SHERWOOD leaves the Area – Recovery of More Methamphetamine**

28.     On or about April 12, 2021, SHERWOOD departed Port Angeles,
Washington. At approximately 8:00 AM on April 13, 2021, SHERWOOD, was involved
in a one car accident on I-90 in Livingston, Montana. The accident occurred on a bridge
that runs over the Yellowstone River. A tow truck driver reported to police that he saw a

AFFIDAVIT OF SA POSTMA – 11
USAO #2021R00471

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  vehicle that had crashed. The driver of the vehicle, later identified as SHERWOOD, was
2  out of the vehicle talking to a person in another vehicle. As the tow truck driver activated
3  his top lights, the vehicle talking with SHERWOOD immediately drove away.  The
4  vehicle that SHERWOOD crashed was a Ford F250 pickup truck bearing Washington
5  license plate C98658N.

6       29.    At approximately 8:50 AM, an individual reported to police that he found a
7  brown suitcase floating in the Yellowstone River approximately 4,000 feet downstream
8  from where the accident occurred. Inside the suitcase, officers located approximately 52
9  pounds of suspected methamphetamine and one kilogram of an unknown brown
10  substance believed to be heroin. In the Livingston Police Department report
11  (LPD21OFF000268), Sergeant Emanuel stated "if the suitcase was discarded into the
12  river from the bridge, it would be reasonable for the suitcase to get hung up on the first
13  bend of the river. This appears to be where the suitcase was found. It should also be noted
14  that [the individual] stated that the suitcase was in fact floating and was circling in an
15  eddy just off of the shore."

16       30.    It should be noted that the methamphetamine found in the suitcase was
17  packaged in 4-pound bags, which is consistent with the weight of the methamphetamine
18  packages found in the duffel bag on the beach in Port Angeles, Washington.

19  **D.**    **Tracking of Subject Accounts 1 and 3.**

20       31.    On April 19, 2021, investigators applied for and were issued a cellular
21  phone Tracking Search Warrant and Pen-Trap Order in the United States District Court
22  for the Western District of Washington for **Subject Account 1**—the number believed to
23  be used by SHERWOOD.  The location data for **Subject Account 1** showed the
24  telephone number was located near 1 Tupperware Drive, North Smithfield, RI.

25       32.    On April 21, 2021, investigators conducted physical surveillance at 1
26  Tupperware Drive, North Smithfield, RI.  Law enforcement reported a sign outside of the
27  business door providing the following information: Liquidators Inventory Exchange,
28  LLC. The sign listed **Subject Account 1** and **Subject Account 3** as the contact

AFFIDAVIT OF SA POSTMA – 12
USAO #2021R00471

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   information for the business. Investigators observed SHERWOOD exit from the main

2   door marked with a "9", place trash into a dumpster, then re-enter the building. Agents

3   also observed SHERWOOD open the garage door.  An internet search of the business

4   showed the business is owned by SHERWOOD.

5       33.    During the surveillance on April 21, 2021, investigators observed a

6   silver/gray Mercedes vehicle parked in front of the building but the vehicle did not have a

7   front license plate so they were unable to identify the registered owner of the vehicle.

8       34.    From the time SHERWOOD arrived in Rhode Island on or about April 15,

9   2021 until he departed on or about April 25, 2021 geolocation data for **Subject Account**

10  **1** indicated that the device was regularly in the area of 1 Tupperware Drive, North

11  Smithfield, RI, including during overnight hours.  This led investigators to conclude that

12  SHERWOOD slept in the area of 1 Tupperware Drive, North Smithfield, RI.  On April

13  30, 2021, investigators interviewed Oscar Hancock, an associate of SHERWOOD.

14  Hancock told investigators SHERWOOD lives at the Tupperware Mill business and that

15  SHERWOOD has females that he is "detoxing" that live there with him.

16      35.    On April 26, 2021, pursuant to information obtained from the cellular

17  phone tracking warrant, investigators determined that **Subject Account 1** was located at

18  or near an Econo Lodge Hotel at 1906 Rose Street, La Crosse, WI.  Parked next to the

19  Econo Lodge Hotel, investigators observed a silver/gray Mercedes ML320 bearing

20  Rhode Island License Plate 1AK258.  The Mercedes ML320 is the same type of vehicle

21  that was observed at 1 Tupperware Drive, Suite 9 on April 21, 2021 (detailed above).

22  Rhode Island Department of Motor Vehicle records revealed that Rhode Island license

23  plate 1AK258 is assigned to a 2007 black Cadillac DTS registered to Liquidators

24  Inventory Exchange LLC, mailing address 1 Tupperware Drive, Suite 9, North

25  Smithfield, Rhode Island.  On April 27, 2021, investigators contacted management at the

26  Econo Loge Hotel and determined that SHERWOOD was a registered guest at the hotel

27  on the evening of April 26, 2021.

28

36.     On April 28, 2021, pursuant to information obtained from the cellular phone tracking warrant, investigators determined that **Subject Account 1** was located in the Eastern District of Washington, north of Colville, Washington and later near Kettle Falls, Washington.  Law enforcement conducted physical surveillance and notified the Stevens County Sheriff's Office (SCSO) (located in the Eastern District of Washington) that a silver/gray Mercedes bearing Rhode Island license plate 1AK258 was in the area of Kettle Falls, Washington and that according to Rhode Island Department of Licensing records, the license plate was assigned to a 2007 black Cadillac DTS, not to a silver/gray Mercedes.

37.     The SCSO conducted a traffic stop of the silver/gray Mercedes.  The SCSO determined that the driver of the vehicle was JOHN MICHAEL SHERWOOD, Texas driver's license number 43704436, date of birth 1957, address 14384 Schmidt Craft Lane, Schertz, Texas.  SHERWOOD provided the SCSO with a copy of a bill of sale that indicates that one silver 2000 Mercedes ML 320, Serial # 4JGAB54E4YA215691 (SV1) was sold to Liquidators Inventory Exchange LLC, 1 Tupperware Dr Ste 9, North Smithfield, Rhode Island on February 11, 2021, for the sum of $1,500 and that he traded in a 2007 Cadillac DTS.  The buyer is listed as Liquidators Inventory Exchange LLC, John SHERWOOD.  After the traffic stop, SHERWOOD continued towards the Canadian border.

**E.     SHERWOOD is Arrested in Possession of Over 100 Pounds of Marijuana – Recovery of Devices Associated with Subject Accounts 1 and 4**

38.     On April 29, 2021, law enforcement continued to watch SHERWOOD. Investigators observed SHERWOOD's vehicle exit a remote area near the Canadian border headed southbound towards Colville, Washington.  The vehicle continued south eventually arriving in Spokane, Washington.  In Spokane the vehicle entered onto Interstate 90 and started heading east.  Investigators notified the Kootenai County Sheriff's Office (KCSO) in the District of Idaho that a silver/gray Mercedes bearing Rhode Island license plate 1AK258 was headed eastbound on Interstate 90 and that

AFFIDAVIT OF SA POSTMA – 14
USAO #2021R00471

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

according to Rhode Island Division of Motor Vehicles, the license plate was assigned to a 2007 black Cadillac DTS, not to a silver/gray Mercedes. SHERWOOD was traffic stopped by the KCSO in the District of Idaho. During the traffic stop, the KCSO located approximately 107 pounds of suspected marijuana. SHERWOOD was arrested by the KCSO and charged in Kootenai County.

39.    After being read his Miranda Rights, SHERWOOD stated he had approximately 100 pounds of marijuana in his vehicle. Additionally, SHERWOOD stated the marijuana was being transported for "Kilo" to Boston, Massachusetts and SHERWOOD was being paid $40,000 to transport the drugs.

40.    At the time of SHERWOOD's arrest on April 29, 2021, a LG Boost Mobile cell phone with a black and silver phone case was recovered from SHERWOOD. This device was in SHERWOOD's pocket when he was arrested. SHERWOOD stated to arresting officers that the cellular telephone number for this device is **Subject Account 1.**

41.    At the time of SHERWOOD's arrest on April 29, 2021, a blue and black AT&T cell phone, was recovered from SHERWOOD. This device was plugged into a USB port of SHERWOOD's vehicle (the silver/gray Mercedes bearing Rhode Island license plate 1AK258) and was seized from the middle console area of that vehicle. SHERWOOD stated to the arresting officers that the cellular telephone number for this device is **Subject Account 4.**

42.    SHERWOOD is currently being held in Kootenai County, Idaho on $250,000 bond. After he was booked at the Kootenai County Jail, investigators tried to interview SHERWOOD but stopped when he invoked his right to remain silent.

**F.    Interview of BOCELLE.**

43.    On April 30, 2021, investigators interviewed Erika BOCELLE in Providence, Rhode Island. BOCELLE stated she has known SHERWOOD for approximately six months. BOCELLE admitted she sold drugs to SHERWOOD, who would purchase crack cocaine for himself and other drugs for the prostitutes he was with. BOCELLE has numerous previous arrests, some of which have resulted in convictions.

AFFIDAVIT OF SA POSTMA – 15
USAO #2021R00471

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1    BOCELLE has convictions for drug possession in 2014, as well as what appear from her
2    criminal history report to be convictions or pending charges for drug possession
3    (described on the criminal history report as "charge info signed") and a possible
4    conviction for drug distribution (described on the criminal history report as "no info
5    signed") in 2020. BOCELLE also has a misdemeanor shoplifting conviction in 2019, and
6    a misdemeanor resisting arrest conviction in 2020.

7         44.    When asked about making a trip to the Port Angeles area with
8    SHERWOOD, BOCELLE explained that SHERWOOD asked BOCELLE to travel to
9    Washington with him.  SHERWOOD claimed he needed a female with a valid license.
10   SHERWOOD offered BOCELLE $5,000 to drive out to Washington and back to Rhode
11   Island with him.  Prior to leaving, SHERWOOD told BOCELLE he had a "big score."
12   BOCELLE thought she was being paid to drive a vehicle loaded with drugs.  BOCELLE
13   agreed to travel to Washington.

14        45.    BOCELLE stated she flew into Seattle on April 6, 2021, and SHERWOOD
15   picked her up.  According to BOCELLE, while she was in Port Angeles, Washington
16   with SHERWOOD, he took her to a storage unit. Inside the storage unit, BOCELLE
17   observed five or six duffel bags. When SHERWOOD opened one of the bags, BOCELLE
18   could see laundry soap.  BOCELLE also commented that the storage unit smelled like
19   methamphetamine.  BOCELLE also stated that SHERWOOD told BOCELLE he lost a
20   bunch of methamphetamine in the water.  SHERWOOD told BOCELLE he was going
21   towards Canada in a raft when the raft flipped and that he returned to the beach the day
22   after when he dragged duffel bags from the water and stashed them under a bridge.

23        46.    BOCELLE stated SHERWOOD stole approximately one pound of meth
24   from one of the duffel bags.  BOCELLE admitted to stealing approximately an 8-ball of
25   meth from SHERWOOD, which she stated was currently in her boyfriend's possession.
26   BOCELLE stated that on either April 8th or 9th, she left Washington in the U-Haul rented
27   by SHERWOOD and that she returned the U-Haul in Missoula, Montana.

28

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

47.     During the interview, BOCELLE referred numerous times to her phone for additional information and/or dates. In addition to selling drugs, Bocelle stated to investigators that she uses drugs.  At the conclusion of her interview BOCELLE asked if she was arrested, if the FBI could tell the local police she was cooperating so she could be released.  Investigators advised BOCELLE she should stop selling narcotics and that the FBI could not help her if she got arrested.  BOCELLE acknowledge and apologized for asking.

**G.     Review of Financial and other Records – Ties between SHERWOOD and GARTRY, use of Subject Accounts 3, 5 and 6.**

48.     Review of financial records provided to investigators by MoneyGram International, Inc. reveals that on March 12, 2021, Kevin GARTRY sent SHERWOOD $800.00.  When SHERWOOD received the money at Rapid Case #84 located at 690 E. Prater Way, Sparks, Nevada he provided MoneyGram International, Inc. his cellular telephone number as (210) 984-2543 (**Subject Account 5.)**  These records reveal that between March 5, 2021 and March 24, 2021, GARTRY sent SHERWOOD $4,883.42 via MoneyGram.

49.     In March 2021, law enforcement identified a suspicious vehicle through information gathered from license plate reader (LPR) camera collections near the Canadian border in northern Montana.   As a result, law enforcement surveilled the vehicle and performed a vehicle stop.  The driver of the vehicle was identified as SHERWOOD who stated he was looking for a bar and that he had a liquidator business called Liquidator Inventory Exchange and was looking to possibly expand into Montana.

50.     Law enforcement contacted the local hotel where SHERWOOD stayed between March 21, 2021, and March 23, 2021.  Law enforcement learned that SHERWOOD also rented a room at the hotel on March 10, 2021, the same day that the rental van was observed by the LPR cameras.  Law enforcement retrieved trash from the room that SHERWOOD stayed between March 21, 2021, and March 23, 2021.  The following was found on a piece of notepaper in the trash: "sent from Kevin Gartry,"

AFFIDAVIT OF SA POSTMA – 17
USAO #2021R00471

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

675,218," "100 Kilo," "600-," "Moneygram," "Sherwood.lie@gmail.com (**Subject Account 3**). Law enforcement was also able to determine that SHWERWOOD rented the van on March 7, 2021 in Sacramento, California and returned the van on March 23, 2021 to the same location.

51.     In June 2012, in the United States District Court for the Western District of Washington, Kevin GARTRY was sentenced to 135 months in prison and five years of supervised release, related to a 2011 incident where he attempted to smuggle 14.9 kilograms of cocaine form the United States into Canada.

52.     Review of the Kootenai County Jail inmate communication platform reveals that on May 2, 2021, SHERWOOD sent a contact request to the email address kevingartry@gmail.com (**Subject Account 15**.)

53.     Review of financial records provided to investigators by MoneyGram International, Inc. reveals that on April 11, 2021, GARTRY sent $1,000.00 to Carol Jean STUART of 535 E Front Street, Port Angeles, WA, an address that belongs to the Riviera Inn Motel. STUART provided MoneyGram her date of birth in 1986 and her Washington State Driver's License "WDL5Z7B4C23B" as identification. Lastly, it should be noted that this money transfer was received by STUART at the Walmart located at 3411 E Kolonels Way, Port Angeles, WA.

54.     Law enforcement received security footage images from the Walmart located at 3411 E Kolonels Way, Port Angeles, WA. The security footage images were taken on April 11, 2021, and showed a man, believed to be SHERWOOD, appearing to approach and hand a light colored object to an unknown woman (later identified as Carol Jean STUART, as set forth below) in the front parking lot area of Walmart. The unknown woman is documented as getting into and leaving in a red 2007 Chevy HHR, with Washington State license plate number BWP4458. Washington State records indicate the registered owner of the Chevy HHR is Carol Jean STUART of 535 E Front Street, Port Angeles, WA 98362, an address previously noted as belonging to the Riviera Inn Motel. The photograph on STUART'S Washington State Driver's License,

AFFIDAVIT OF SA POSTMA – 18
USAO #2021R00471

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

numbered WDL5Z7B4C23B, closely matches the aforementioned Walmart security photograph of the woman meeting with and receiving the light-colored object from a man believed to be SHERWOOD.

55.     Port Angeles Police Department (PAPD) records indicate that a domestic assault took place on March 8, 2021, at the Riviera Inn Motel.  The PAPD reported that STUART, a self-identified housekeeper at the Riviera Inn Motel, was a witness to the domestic assault.  STUART provided PAPD with her cellular telephone number of (360) 728-0555 (**Subject Account 6**).

**H.     Review of Telephone and Financial Records – Links between Subject Accounts**

56.     Review of telephone records related to phone numbers called and received by Subject **Account 1** indicate that, between the dates April 5, 2021, and April 11, 2021, **Subject Account 1** is in contact with **Subject Account 6** approximately 87 times. Records additionally indicated, during the same time period, **Subject Account 6** is in contact with **Subject Account 1** approximately 41 times.  Notably, these dates bookend the dates where the large amounts of methamphetamine were recovered in the same general area.

57.     Pursuant to a court order, investigators received information pertaining to **Subject Account 1** and **Subject Account 2**.  The information indicated that the following unique identifier numbers were associated with **Subject Account 1** and **Subject Account 2**:

- **Subject Account 1**
  - IMSI: 310240139266141
  - IMEI: 35459011790834
  - IMSI: 310240130938201
  - IMEI: 35452711281286

- **Subject Account 2**
  - IMSI: 310260044600099
  - IMEI: 99001711217855

58.     Based on a review of information available to any user of Facebook, Facebook account 100013692407596 is registered to "JOHN M SHERWOOD." The user of the account posted that their telephone number is **Subject Account 1**.  Additional account information stated the account user is self-employed at Liquidators Inventory Exchange, LLC, with a business email of jsherwood.lie@gmail.com (**Subject Account 7.**)

59.     Various photographs posted to Facebook account 100013692407596, registered to JOHN M SHERWOOD, depict a male that appears to be the same person depicted in the Texas Department of Licensing records for SHERWOOD. On May 28, 2019, the user of Facebook account 100013692407596 posted "Where were all of her alleged caring friends! $5 whole dollars raised, yet hundreds of people attack me. Most of you are fake assholes looking for sympathy and a free high. Shut the fuck up." With a link to a Gofundme listing for A.T.. This post appears related to an incident that SHERWOOD previously reported to his United States Probation Officer as detailed below.

60.     **Subject Account 8** is listed as the telephone number provided by GARTRY in the MoneyGram transactions described above.  Between March 5, 2021 and April 11, 2021 GARTRY sent John SHERWOOD,  Oscar HANCOCK, Erika BOCELLE, and Carol Jean STUART $8,083.42 in eleven separate transactions.  The phone number GARTRY provided to MoneyGram for all eleven transactions is **Subject Account 8.**  The date range of these money transfers also coincides with the suspicious activity near the Canadian border in Montana and near Port Angeles, Washington.

61.     Review of telephone records for **Subject Account 8** reveals that the telephone number was used in a cellular device with the IMEI 35273411178113. Further review of telephone records reveals that **Subject Account 9, Subject Account 10, Subject Account 11,** and **Subject Account 12** were also used with the cellular device with IMEI 35273411178113.

1    62.    Based on my training and experience and on discussions with Special

2  Agents in the FBI's Cellular Analysis Survey Team (CAST) program, I know that IMEI

3  numbers are unique to cellular devices, i.e. each cellular device has its own unique IMEI

4  number that does not change (rather like a serial number), and it is common for

5  individuals involved in narcotics trafficking to utilize multiple phone numbers with the

6  same cellular device.  An IMSI number, by contrast, is associated with a particular

7  cellular service subscription.  A particular cellular device might be assigned more than

8  one IMSI over time.

9    63.    **Subject Account 8, Subject Account 9, Subject Account 10, Subject

10  Account 11,** and **Subject Account 12** are Canadian cellular telephone numbers.  Review

11  of telephone records for **Subject Account 8, Subject Account 9, Subject Account 10,**

12  **Subject Account 11,** and **Subject Account 12** reveals that these numbers

13  utilized/roamed on cell towers in Washington and Montana in January 2021, February

14  2021, March 2021, April 2021, and/or May 2021.  Based on my training and experience

15  and on discussions with Special Agents in the FBI's Cellular Analysis Survey Team

16  (CAST) program, I know that if a cellular telephone number utilizes/roams on a cell

17  tower in another country that the device must be in close proximity to the cell tower in

18  that country or the device is located within the other country.  For example, it is possible

19  for a cellular telephone number for a device located in the United States to utilize/roam

20  on a cell tower located in Canada or Mexico if the cellular signal from the cellular tower

21  located in Canada or Mexico is stronger than the signal from the nearest cellular tower in

22  the United States where the device is physically located or the device is located in the

23  United States.

24    64.    Review of telephone records related to phone numbers called and received

25  by **Subject Account 10** reveal six contacts with **Subject Account 4** on April 29, 2021,

26  and April 30, 2021.

27    65.    On May 13, 2021, in the United States District Court for the Western

28  District of Washington, investigators applied for and were granted a search warrant to

AFFIDAVIT OF SA POSTMA – 21
USAO #2021R00471

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

search a cellular telephone that was in SHWERWOOD's possession at the time of his arrest.  Review of data extracted from that device reveals that the telephone number for one of the two devices is **Subject Account 4**.  Review of the contact list extracted from that device reveals that **Subject Account 10** is listed under the name "Kilo."

66.     Review of SHERWOOD call activity at the Kootenai County Jail reveals that SHERWOOD has placed twenty-four calls to **Subject Account 11** between May 9, 2021, and June 19, 2021.

67.     **Subject Account 13** is a Canadian cellular telephone number.  Review of telephone records for **Subject Account 13** reveals that the cellular number was used in two cellular devices, one assigned IMEI 35155907718095 and the other assigned IMEI 35318111015139.  Review of those same records reveals that **Subject Account 13** utilized/roamed on cell towers in Washington and Montana in March 2021 and April 2021.   The records also reveal that the cellular telephone numbers for **Subject Account 10** and/or **Subject Account 11** used the cellular devices with IMEI 35155907718095 and/or IMEI 35318111015139.  Based on my training and experience and on discussions with Special Agents in the FBI's Cellular Analysis Survey Team (CAST) program I know that if multiple cellular telephone numbers are utilized in different mobile devices, each with its own unique IMEI number, that either the same person is utilizing those devices and numbers or two people in close proximity to each other are using the devices.

68.     Review of telephone records for **Subject Account 10,  Subject Account 11,** and **Subject Account 13** reveals that the telephone numbers were each used in a cellular device with the IMEI 35155907718095.

69.     Review of telephone records for **Subject Account 11** and **Subject Account 13** reveals that the telephone numbers were each used in a cellular device with the IMEI 35318111015139.

70.     On May 7, 2021, in the United States District Court for the District of Rhode Island, investigators applied for and were granted a search warrant to search the person of BOCELLE, to include any cellular telephones she may have on her person.

AFFIDAVIT OF SA POSTMA – 22
USAO #2021R00471

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1 Review of data extracted from a cellular telephone that she had in her possession at the
2 time the warrant was executed reveals that the telephone number for the device is
3 **Subject Account 2**.  Review of the contact list extracted from that device reveals that
4 **Subject Account 1** and **Subject Account 14** are listed under the name "Sher John,"
5 believed to be short for SHERWOOD.

6       71.    Review of instant messages extracted from that device reveals that on April
7 13, 2021 a message was sent from **Subject Account 14** to **Subject Account 2**.  That
8 message includes two photographs.  One of the photographs is of a Ford pickup truck
9 bearing Washington license plate C98658N parked on the side of a roadway on a bridge
10 that crosses over a river.  The vehicle has damage to the front driver's side and appears to
11 be crashed at the location.  The vehicle depicted in the photograph bears the same license
12 plate and description as the vehicle involved in the previously described accident in
13 Livingston, Montana and the messages was sent on the same date as the accident.

14 **I.**    **Additional Information about SHERWOOD.**

15       72.    **Information about SHERWOOD**: SHERWOOD has an extensive
16 criminal history that includes a federal conviction for a marijuana distribution offense in
17 the United States District Court for the Western District of Texas at Pecos under Case
18 No. P-04-CR-00191-DC. He was convicted after a jury trial in December of 2004 and
19 sentenced on April 29, 2005, to a term of imprisonment of 235 months and five years of
20 supervised release. His conviction was affirmed on appeal. His sentence was later
21 reduced pursuant to an amendment to the Sentencing Guidelines to 188 months in March
22 of 2015. He began his term of supervised release on June 5, 2018.

23       73.    On May 14, 2019, the Probation Office for the Western District of Texas
24 filed a petition for a warrant for several violations of the terms of SHERWOOD's
25 supervised release. Among other violations, SHERWOOD disclosed to his United States
26 Probation Officer that he had travelled outside of the Western District of Texas without
27 approval of the Probation Officer in violation of the terms of his conditions and terms of
28 supervision. SHERWOOD told his probation officer that he drove a Ryder rental truck to

AFFIDAVIT OF SA POSTMA – 23
USAO #2021R00471

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  Union City, Indiana and his female friend, A.T., followed him in his white Chevrolet
2  Tahoe as she was assisting him with his supposed personal liquidation business.
3  SHERWOOD indicated that A.T. was a heroin addict and overdosed in the backseat of
4  his Tahoe on May 12, 2019. SHERWOOD claimed he was not present at the time of the
5  overdose due to him being in a "business meeting" but claimed he found her in the
6  backseat of his vehicle and attempted to resuscitate her for approximately 25 minutes,
7  without success. SHERWOOD disclosed he failed to contact local authorities in Indiana
8  and decided to wrap her body in a blanket and return her corpse to San Antonio, Texas.
9  SHERWOOD stated he left her corpse in his vehicle off Culebra Road (exact location
10  unknown) and called San Antonio Police advising them of the location of her body.
11  SHERWOOD denied remaining at the scene. SHERWOOD also admitted to fleeing the
12  country to Mexico. The Probation Officer confirmed that SHERWOOD had in fact
13  contacted San Antonio PD and that they had recovered A.T.'s corpse. An arrest warrant
14  was issued.   SHERWOOD was ultimately arrested in Indiana on his warrant on
15  September 8, 2019. The court revoked his supervised release on February 18, 2020 and
16  imposed a custodial sentence of 13 months, with no supervision to follow.

17      74.     As set forth above, SHERWOOD has been held in the Kootenai County jail
18  in Idaho on local charges since he was caught with marijuana during a traffic stop on
19  April 29, 2021.  I have accessed recorded jail calls made by SHERWOOD while in
20  custody, some of which refer to some of the **Subject Accounts** and/or to other co-
21  conspirators, including GARTRY.

22      75.     Review of jail call recordings in Kootenai County Jail inmate
23  communication platform reveal that SHERWOOD places several calls to telephone
24  number 513.833.4540.  Review of United States Bureau of Prisons records for
25  SHERWOOD reveal that SHERWOOD lists telephone number 513.833.4540 for his
26  friend David Galt.

27      76.     During a call to telephone number 513.833.4540 on May 3, 2021,
28  SHERWOOD provides his email address, **Subject Account 3**, along with several

AFFIDAVIT OF SA POSTMA – 24
USAO #2021R00471

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

possible passwords for the account and asks the callee to try and log into **Subject Account 3**.

77.     During another call on May 3, 2021, SHERWOOD requests the callee to get on Paypal and request money from GARTRY.  During the call, SHERWOOD states that GARTRY has sent him $5,000 in the last two months and that GARTRY is the guy in Canada that SHERWOOD was hooking up with "cooler/refrigeration units."

78.     Review of jail call recordings in Kootenai County Jail inmate communication platform reveal that SHERWOOD places several calls to telephone number 765.964.4674.  Review of United States Bureau of Prisons records for SHERWOOD reveal that SHERWOOD lists telephone number 765.964.4674 for his friend Virginia/Ginny Meister.

79.     During a call on May 3, 2021 to telephone number 765.964.4674, SHERWOOD provides his email address, **Subject Account 3**, along with several passwords for the account and asks the callee to try and log into **Subject Account 3**. During a call on May 8, 2021 to telephone number 765.964.4674, SHERWOOD provides his telephone number, **Subject Account 1**, and several possible passwords for the account and asks the callee to access his voicemail and states that he is looking for calls from an "attorney" in Chicago, "KG", or "Erica"[4] and that these are very important numbers.

80.     During a call on May 9, 2021 to telephone number 765.964.4674, the callee tells SHERWOOD that he received a message from "Steve" and provided **Subject Account 11** as the number for "Steve."

81.     On May 9, 2021, SHERWOOD spoke from the Kootenai County jail with the user of **Subject Account 11**, whom may be Kevin GARTY or another participant in the drug trafficking organization.  During the call SHERWOOD attempts to determine who he is talking to.  The callee states that SHERWOOD is talking to his "nephew."  The

---

[4] Likely references to GARTRY and BOCELLE

AFFIDAVIT OF SA POSTMA – 25
USAO #2021R00471

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1 callee asks SHERWOOD what he is being held for, what led up to him being held, if he
2 is being charged by the state, if he has an attorney, and whether bond is an option. The
3 callee tells SHERWOOD that he left a message on SHERWOOD's voicemail about some
4 of the outstanding business they had with the "inventory" (possibly code for additional
5 narcotics) that SHERWOOD still had and that he wanted to make sure he got the callee's
6 number.

7      82. During the call SHERWOOD tells the callee to listen to him closely then
8 states "the beach, ok, and, and, uh, could be an issue, ok, and um, and um, and, and the
9 lake, ok, the exposure, the exposure you know what I am saying, ok and all that." I
10 believe the "beach" may be a reference to the location where the large quantity of
11 methamphetamine recovered from the Port Angeles area in Washington, discussed above.

12      83. The callee responds by asking whether SHERWOOD is having any issues
13 with the timeshare at the "beach" and if that has been brought up in any way, and later
14 tells SHERWOOD that he has enough to go on. SHERWOOD provides the callee with
15 David Galt's name and number and tells the callee that everybody should be very careful
16 out there. SHERWOOD tells the callee that the FBI went to and searched his warehouse
17 in Rhode Island. The callee tells SHERWOOD that he wishes they could have done
18 more to help him and that the two of them trying to get the company going with the other
19 "inventory" SHERWOOD is still holding, they are trying their best, but setting up a new
20 business in this time and day right now especially with not a lot of capital is tough.
21 SHERWOOD tells the callee that he doesn't understand why the FBI would be involved
22 with a marijuana case with him. The callee tells SHERWOOD that he has no money, that
23 if he was doing big things he would have money, that the small amount of money that
24 they have been dealing with in the company is pennies, that if he was up to some sort of
25 mobster stuff he wouldn't be driving a smashed-up truck. SHERWOOD tells the callee
26 he got the stuff from a guy by the name of "Kilo." (a possible reference to GARTRY).
27 SHERWOOD tells the callee that he is trying to get David (Galt) to turn his phone off
28

1  and get another phone and then his Google backup will download his phone numbers to

2  the new phone.

3  **J.      Additional Information about GARTRY**

4         84.     As set forth above, GARTRY has a prior federal conviction from this

5  District, and is still subject to supervised release – although given his treaty transfer back

6  to Canada, he is not being supervised by any U.S. Probation Officer.

7         85.     Investigators have reviewed United States Federal Bureau of Prisons (BOP)

8  records for GARTRY.  BOP records reveal that Sydney Perrizo, email account

9  sperrizo24@hotmail.com, is a friend of GARTRY and a parent of Lucas Woodard.  BOP

10  records for Woodard reveal that in April 2021 Perrizo sent Woodard, who is currently in

11  federal custody at a BOP facility, an email which states "KG has a new number -825-

12  994-8556.  He sends his love and is glad to hear you are getting outside and getting food

13  to eat.  HHLP. Mom"  The telephone number Perrizo provided for KG is **Subject**

14  **Account 12**.

15         86.     BOP records reveal that **Subject Account 12** is listed as a contact number

16  for BOP inmates Woodard and Nicholas Bickle.  BOP records for Woodard list a contact

17  name of "Kevin Phoole" for **Subject Account 12**.  BOP records for Bickle list a contact

18  name of "Kyle Gray" **Subject Account 12**.  BOP records for Bickle also list **Subject**

19  **Account 8**, **Subject Account 9**, and **Subject Account 11** as contact telephone numbers

20  for Kyle Gray.  I know that BOP does not attempt to verify the true names associated

21  with contact numbers provided by inmates.

22  **K.      Conclusion – Probable Cause as to Subject Accounts**

23         87.     As set forth above, there is probable cause to believe that the various

24  identified Subject Accounts have been and/or are being used by the identified members

25  of the smuggling cell.  There is also probable cause to believe that information, including

26  content information, contained in the Subject Accounts, all in Google's possession and

27  control, will constitute evidence of the crimes currently being investigated.

28

AFFIDAVIT OF SA POSTMA – 27
USAO #2021R00471

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

88.     First, there is probable cause to believe that members of the smuggling cell use various Google services to communicate with one another about their activities. As set forth above, toll data shows many of the Subject Accounts to be in contact with one another. Second, SHERWOOD, in recorded jail calls, asked other associates to access some of his Subject Accounts to obtain contact information and/or look for messages from other members of the cell, including GARTRY. I know, based on my training and experience, that individuals engaged in cross-border drug smuggling activities have a need to communicate with one another to coordinate their activities. There is probable cause to believe that SHERWOOD, GARTRY and others have used Google's services to do so, that some of these communications may still be retained in Google's records,[5] and that said communications are evidence of the crimes being investigated herein.

89.     Second, SHERWOOD provided some of the Subject Accounts to various vendors (rental companies, storage lockers, hotels, etc.) as he obtained services from the vendors in furtherance of the smuggling activity. Receipt of confirmation emails/messages and other communications from the known vendors will tend to confirm SHERWOOD's identity and involvement in the criminal activity. In addition, there is probable cause to believe that SHERWOOD's smuggling activity is part of an ongoing criminal enterprise, and likely includes other successful smuggling events. Obtaining the content of SHERWOOD's Subject Accounts will tend to reveal his travel patterns and use of other storage lockers, hotel rentals, rental of other vehicles, and the like.

90.     Third, and similar to above, financial records show that GARTRY wired funds to SHERWOOD and other suspected associates. As part of those financial transactions, GARTRY, SHERWOOD and others provided some of the Subject Accounts to further the wire transfers. Confirming the users of the Subject Accounts will therefore

---

[5] The government has previously sent preservation requests to Google for the Subject Accounts. Accordingly, even if someone has accessed the accounts, including to delete information, Google was obligated to preserve the information pending the issuance of the requested search warrants.

AFFIDAVIT OF SA POSTMA – 28
USAO #2021R00471

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  be useful.  There is also reason to believe that information and communications
2  pertaining to those transfers will be contained in some of the Subject Accounts.

3       91.    Fourth, as set forth below, Google often captures and retains location data
4  pertaining to the users of its various services.  In addition, traffickers often use Google
5  Maps and other location services to search for and find previously agreed upon
6  smuggling locations, and Google will retain those queries.  Obtaining those records will
7  serve to confirm the location of the various suspected members of the smuggling
8  conspiracy at key known times (i.e., that SHERWOOD's known devices were in
9  proximity to the various bags full of drugs recovered), and also reveal other useful
10 evidence, including past suspected smuggling events, potential stash locations, and the
11 like.

## BACKGROUND INFORMATION ABOUT GOOGLE

13      92.    I know from speaking with other law enforcement that "cookies" are small
14 files placed by a server (such as those used by Google) on a device to track the user and
15 potentially verify a user's authentication status across multiple sites or webpages.  This
16 cookie could be unique to a particular account (e.g., the Google account) or to a given
17 device (e.g., the particular phone used to access the Google account). The next time a
18 user visits a particular site or server, the server will ask for certain cookies to see if the
19 server has interacted with that user before.  Cookies can also be used to determine
20 "machine cookie overlap," or multiple accounts that have been accessed by the same
21 individual machine (e.g., two Google accounts that have been accessed on the same
22 phone).  The machine cookie overlap thus allows Google to track accounts that are
23 "linked" to each other because the same user account (username on a computer) on the
24 same device accessed multiple Google accounts.  This can identify either multiple
25 Google accounts used by the same person or used by different people sharing the same
26 user account and device.  In either case, the machine cookie overlap means that the users
27 of the linked accounts are the same person or two people in close proximity to each other.

28

AFFIDAVIT OF SA POSTMA – 29
USAO #2021R00471

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1       93.    In my training and experience, I have learned that Google provides a

2 variety of on-line services, including, but not limited to, electronic mail ("email") access,

3 to the public.  Google allows subscribers to obtain email accounts at the domain name

4 gmail.com, like the email account listed in Attachment A.  Subscribers obtain an account

5 by registering with Google.  During the registration process, Google asks subscribers to

6 provide basic personal information.  Therefore, the computers of Google are likely to

7 contain stored electronic communications (including retrieved and unretrieved email for

8 Google subscribers) and information concerning subscribers and their use of Google

9 services, such as account access information, email transaction information, and account

10 application information.  In my training and experience, such information may constitute

11 evidence of the crimes under investigation because the information can be used to

12 identify the account's user or users.  In addition, a person's Gmail account provides the

13 user with the ability to log into, access, and use other Google services, including, but not

14 limited to, Google Maps (mapping service), Google Play (applications store), Google

15 Drive (file storage) and Google Voice (telephone service).  Most services are free, but

16 some of the services either require payment to subscribe, or allow premium access with

17 payment.

18       94.    A Google subscriber can also store with the provider files in addition to

19 emails, such as address books, contact or buddy lists, calendar data, pictures (other than

20 ones attached to emails), and other files, on servers maintained and/or owned by Google.

21 In my training and experience, evidence of who was using an email account may be

22 found in address books, contact or buddy lists, email in the account, and attachments to

23 emails, including pictures and files.

24       95.    In my training and experience, Google generally asks its subscribers to

25 provide certain personal identifying information when registering for an email account.

26 Such information can include the subscriber's full name, physical address, telephone

27 numbers and other identifiers, alternative email addresses, and, for paying subscribers,

28 means and source of payment (including any credit or bank account number).  Such

1    information may constitute evidence of the crimes under investigation because the
2    information can be used to identify the account's user or users.  Based on my training and
3    my experience, I know that, even if subscribers insert false information to conceal their
4    identity, this information often provides clues to their identity, location, or illicit
5    activities.

6          96.     In my training and experience, Google retains certain transactional
7    information about the creation and use of each account on its systems.  This information
8    can include the date on which the account was created, the length of service, records of
9    log-in (*i.e.*, session) times and durations, the types of service utilized, the status of the
10   account (including whether the account is inactive or closed), the methods used to
11   connect to the account (such as logging into the account via the provider's website), and
12   other log files that reflect usage of the account.  In addition, Google often has records of
13   the Internet Protocol address ("IP address") used to register the account and the IP
14   addresses associated with particular logins to the account.  Because every device that
15   connects to the Internet must use an IP address, IP address information can help to
16   identify which computers, mobile devices, or other electronic devices were used to access
17   the email account.

18         97.     In my training and experience, in some cases, Google users will
19   communicate directly with Google about issues relating to the account, such as technical
20   problems, billing inquiries, or complaints from other users.  Google typically retains
21   records about such communications, including records of contacts between the user and
22   the provider's support services, as well as records of any actions taken by the provider or
23   user as a result of the communications. In my training and experience, such information
24   may constitute evidence of the crimes under investigation because the information can be
25   used to identify the account's user or users.

26         98.     As explained herein, information stored in connection with a Google
27   account may provide crucial evidence of the "who, what, why, when, where, and how" of
28   the criminal conduct under investigation, thus enabling the United States to establish and

AFFIDAVIT OF SA POSTMA – 31
USAO #2021R00471

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1    prove each element of an offense, or alternatively, to exclude the innocent from further

2    suspicion.  In my training and experience, the information stored in connection with a

3    Google account can indicate who has used or controlled the account.  This "user

4    attribution" evidence is analogous to the search for "indicia of occupancy" while

5    executing a search warrant at a residence.  For example, email communications, contacts

6    lists, and images sent (and the data associated with the foregoing, such as date and time)

7    may indicate who used or controlled the account at a relevant time.

8        99.    Further, I know that information maintained by Google can show how and

9    when the account was accessed or used.  Google also collects and maintains location

10   information pertaining to an account and the use of various Google services.  For

11   example, as described below, Google typically logs the Internet Protocol (IP) addresses

12   from which users access a Gmail account, along with the time and date of that access, and

13   location data for the device(s) logged into the account.  By determining the physical

14   location associated with the logged IP addresses, investigators can understand the

15   chronological and geographic context of the account access and use relating to the crime

16   under investigation. This geographic and timeline information may tend to either

17   inculpate or exculpate the account owner, but can also help locate the device that has

18   logged into a Google account.  Additionally, information stored at the user's account may

19   further indicate the geographic location of the account user at a particular time (*e.g.*,

20   location information integrated into an image or video sent via email).  Last, stored

21   electronic data may provide relevant insight into the account owner's state of mind as it

22   relates to the offense under investigation. For example, information in the account may

23   indicate the owner's motive and intent to commit a crime (*e.g.*, communications relating

24   to the crime), or consciousness of guilt (*e.g.*, deleting communications in an effort to

25   conceal them from law enforcement).

26       100.   Subscribers obtain an account by registering with Google.  When doing so,

27   email providers like Google ask the subscriber to provide certain personal identifying

28   information.  This information can include the subscriber's full name, physical address,

AFFIDAVIT OF SA POSTMA – 32
USAO #2021R00471

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users, and to help establish who has dominion and control over the account.

101.    Email providers typically retain certain transactional information about the creation and use of each account on their systems.  This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via Google's websites), and other log files that reflect usage of the account.  In addition, email providers often have records of the IP address used to register the account and the IP addresses associated with particular logins to the account.  Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the email account.

102.    In some cases, email account users will communicate directly with an email service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users.  Email providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.  In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

103.    **Google Maps**:  Google offers a map service called Google Maps which can be searched for addresses or points of interest. Google Maps can provide users with turn-by-turn directions from one location to another using a range of transportation options (driving, biking, walking, etc.) and real-time traffic updates. Users can share their real-

AFFIDAVIT OF SA POSTMA – 33
USAO #2021R00471

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  time location with others through Google Maps by using the Location Sharing feature.

2  And users can find and plan an itinerary using Google Trips. A Google Account is not

3  required to use Google Maps, but if users log into their Google Account while using

4  Google Maps, they can save locations to their account, keep a history of their Google

5  Maps searches, and create personalized maps using Google My Maps. Google stores

6  Maps data indefinitely unless the user deletes it.

7       104.  **Location History**: Google collects and retains data about the location at

8  which Google Account services are accessed from any mobile device, as well as the

9  periodic location of Android devices while they are in use. This location data can derive

10  from a range of sources, including GPS data, Wi-Fi access points, cell-site locations,

11  geolocation of IP addresses, sensor data, user searches, and Bluetooth beacons within

12  range of the device. According to Google, this location data may be associated with the

13  Google Account signed-in or registered to the device when Location Services are

14  activated on the device and the user has enabled certain global settings for their Google

15  Account, such as Location History or Web & App Activity tracking.  The data retained

16  may be both precision location data, like latitude and longitude coordinates derived from

17  GPS, and inferential location data, such as the inference that a Google Account is in New

18  York because it conducts a series of searches about places to eat in New York and

19  directions from one New York location to another. Precision location data is typically

20  stored by Google in an account's Location History and is assigned a latitude-longitude

21  coordinate with a meter radius margin of error. Inferential data is stored with an

22  account's Web & App Activity. Google maintains these records indefinitely for accounts

23  created before June 2020, unless the user deletes it or opts to automatically delete their

24  Location History and Web & App Activity after three or eighteen months. Accounts

25  created after June 2020 auto-delete Location History after eighteen months unless the

26  user affirmatively changes the retention setting to indefinite retention or auto-deletion at

27  three months.

28

105.    Based on my training and experience, I know that cellular phones can connect to the internet via a cellular network. When connecting through a cellular network, internet communications sent and received by the cellular phone each contain the same unique identifier that identifies cellular voice communications, such as an ESN, MEIN, MIN, SIM, IMSI, MSISDN, or IMEI. Internet communications from a cellular phone also contain the IP address associated with that cellular phone at the time of the communication. Each of these unique identifiers can be used to identify parties to a communication without revealing the communication's contents.

106.    This application seeks a warrant to search all responsive records and information under the control of Google, a provider subject to the jurisdiction of this court, regardless of where Google has chosen to store such information. The government intends to require the disclosure pursuant to the requested warrant of the contents of wire or electronic communications and any records or other information pertaining to the customers or subscribers if such communication, record, or other information is within Google's possession, custody, or control, regardless of whether such communication, record, or other information is stored, held, or maintained outside the United States.

## AGENT'S SPECIALIZED KNOWLEDGE

107.    I know the following from my training, experience, and discussions with other investigators and analysts, about: the transportation and distribution of narcotics; the exchange of funds in payment for or in facilitation of these crimes; and the laundering of proceeds earned from the crimes.  As a result of my training and experience, and my discussions with my law enforcement colleagues, I know the manufacture and distribution of narcotics is frequently, if not always, a continuing criminal enterprise taking place often over months and years. Therefore, although the product, inventory and proceeds of a drug manufacturing and trafficking organization is likely to fluctuate over time, records, evidence, and communications associated with the manufacture and distribution of narcotics are frequently maintained, intentionally or unintentionally, over long periods of time, including within social media accounts.

AFFIDAVIT OF SA POSTMA – 35
USAO #2021R00471

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

108.     Based on my training and experience and based on discussions with other law enforcement agents and officers, individuals that transport and distribute narcotics will also engage in activities to launder the proceeds from those activities.  For example, an individual that is involved in narcotics trafficking might record the revenues and expenses from those activities within the accounts of a legitimate business, and cellular telephones are often utilized to conduct those transactions.

109.     Based on my training and experience I am aware that drug traffickers often use social media accounts to further their illegal activities.  As a result, evidence of drug dealing can often be found in private messages and other data that is stored in social media accounts.  In addition to messages, the social media accounts can contain the names, photographs, communications, and recordings of co-conspirators and others involved in illegal drug trafficking. I believe that evidence of money laundering could also be found in private messages and other data that is stored in social media accounts. The account could also be used to store or be used for the electronic maintenance of ledgers, pay/owe logs, drug weights and amounts, customers contact information, not only during the period of their drug trafficking violations but also for a period of time extending beyond the time during which the trafficker actually possesses/controls illegal controlled substances.  The records are kept in order to maintain contact with criminal associates for future transactions and so that the trafficker can have records of prior transactions for which the trafficker might still be owed money or might owe someone else money.

110.     In addition, I know that some organizations utilize rented vehicles in order to transport narcotics, as rental vehicles tend to blend with legitimate traffic on roadways, are more difficult for law enforcement to trace to individuals than privately registered vehicles, may be changed often.

111.     I know that drug traffickers commonly rent storage units in public storage properties to store controlled substances and cash proceeds of the prior sale of controlled substances. They do this, in part, to create some separation from themselves and the

1  drugs, and to avoid detection.

2      112.   I know that drug traffickers transporting drugs on public roadways will
3  sometimes travel with a companion – often of the opposite sex – in an attempt to blend in
4  and avoid law enforcement detection.

5      113.   I know, based on my training and experience that cellular telephones are
6  one of the key tools and instrumentalities of a drug trafficker's trade. They use them to
7  maintain contact with their suppliers, distributors, and customers. They prefer cellular
8  telephones because, first, they can be purchased without the location and personal
9  information that land lines require. Second, they can be easily carried to permit the user
10 maximum flexibility in meeting associates, avoiding police surveillance, and traveling to
11 obtain or distribute drugs. Third, they can be passed between members of a drug
12 conspiracy to allow substitution when one member leaves the area temporarily. Since
13 cellular phone use became widespread, every drug dealer I have contacted has used one
14 or more cellular telephones for his or her drug business and when connected to a tower or
15 other wireless service, cellular telephones allow for a variety of communication options
16 through various applications and/or services, to include services provided by Google.

17     **INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED**

18     114.   Pursuant to Title 18, United States Code, Section 2703(g), this application
19 and affidavit for a search warrant seeks authorization to require Google, and their agents
20 and employees, to assist agents in the execution of this warrant.  Once issued, the search
21 warrant will be presented to Google with direction that it identify accounts described in
22 Attachments A, to this affidavit, as well as other subscriber and log records associated
23 with the accounts, as set forth in Attachment B to this affidavit.

24     115.   The search warrant will direct the Google to create an exact copy of the
25 specified account and records.  I, and/or other law enforcement personnel will thereafter
26 review the copy of the electronically stored data and identify from among that content
27 those items that come within the items identified in Section II to Attachment B for
28 seizure.

AFFIDAVIT OF SA POSTMA – 37
USAO #2021R00471

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

116.    Analyzing the data contained in the forensic image may require special

technical skills, equipment, and software.  It could also be very time-consuming.

Searching by keywords, for example, can yield thousands of "hits," each of which must

then be reviewed in context by the examiner to determine whether the data is within the

scope of the warrant.  Merely finding a relevant "hit" does not end the review process.

Keywords used originally need to be modified continuously, based on interim results.

Certain file formats, moreover, do not lend themselves to keyword searches, as keywords,

search text, and many common e-mail, database and spreadsheet applications do not store

data as searchable text.  The data may be saved, instead, in proprietary non-text format.

And, as the volume of storage allotted by service providers increases, the time it takes to

properly analyze recovered data increases, as well.   Consistent with the foregoing,

searching the recovered data for the information subject to seizure pursuant to this

warrant may require a range of data analysis techniques and may take weeks or even

months.  All forensic analysis of the data will employ only those search protocols and

methodologies reasonably designed to identify and seize the items identified in Section II

of Attachment B to the warrant.

117.    Based on my experience and training, and the experience and training of

other agents with whom I have communicated, it is necessary to review and seize a

variety of e-mail communications, chat logs and documents, that identify any users of the

subject account and e-mails sent or received in temporal proximity to incriminating e-

mails that provide context to the incriminating communications.

118.    As indicated in the Motion for Nondisclosure and Motion to Seal that

accompany this affidavit, the government requests, pursuant to the preclusion of notice

provisions of Title 18, United States Code, Section 2705(b), that Google be ordered not

to notify any person (including the subscriber or customer to which the materials relate)

of the existence of this warrant for such period as the Court deems appropriate.  The

government submits that such an order is justified because notification of the existence of

this Order would seriously jeopardize the ongoing investigation.  Such a disclosure would

AFFIDAVIT OF SA POSTMA – 38
USAO #2021R00471

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1    give the subscriber an opportunity to destroy evidence, change patterns of behavior,

2    notify confederates, or flee or continue his flight from prosecution.

3        119.    It is further respectfully requested that this Court issue an order sealing all

4    papers submitted in support of this application, including the application and search

5    warrant until such dates as provided in the proposed Order.  I believe that sealing this

6    document is necessary because the items and information to be seized are relevant to an

7    ongoing investigation.  Premature disclosure of the contents of this affidavit and related

8    documents may have a significant and negative impact on the continuing investigation

9    and may severely jeopardize its effectiveness.

10   ## CONCLUSION

11       120.    Based on the forgoing, I request that the Court issue the proposed search

12   warrant.  This Court has jurisdiction to issue the requested warrants because it is "a court

13   of competent jurisdiction" as defined by 18 U.S.C. § 2711.  *See* 18 U.S.C. §§ 2703(a),

14   (b)(1)(A) & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . .

15   that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

16   Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not

17   required for the service or execution of these warrants.  In addition, as set forth above,

18   there is probable cause to believe that the SUBJECT ACCOUNTS are used by John

19   SHERWOOD, and/or others, to commit one or more of the following violations of

20   federal law, and that searching the SUBJECT ACCOUNTS will lead to the discovery of

21   evidence of the following crimes:  distribution and manufacturing of controlled

22   substances, in violation of 21 U.S.C. § 841(a)(1); unlawful use of a communication

23   facility to facilitate the distribution of controlled substances, in violation of 21 U.S.C. §

24   843(b); conspiracy to commit these offenses, in violation of 21 U.S.C. § 846; and money

25   laundering, in violation of 18 U.S.C. § 1956. Accordingly, by this Affidavit and Search

26   Warrant, I seek authority for the government to search all of the items specified in

27   Section I, Attachment B (attached hereto and incorporated by reference herein) to the

28

AFFIDAVIT OF SA POSTMA – 39
USAO #2021R00471

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1 | Warrant, and specifically to seize all of the data, documents and records that are
2 | identified in Section II to that same Attachment.
3
4
5 | TERRANCE G. POSTMA
6 | Special Agent
   | Federal Bureau of Investigation
7
8
9 |     The above-named agent provided a sworn statement attesting to the truth of the
   | foregoing affidavit on this 29th  day of June, 2021.
10
11
12
13
14 | HON. THERESA L. FRICKE
   | United States Magistrate Judge
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800